UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARK A. JENKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:13-cv-0099-TWP-MJD |
| ) | |
| WENDY KNIGHT, Superintendent, ) | |
| WILLIAM HYATTE, Assistant Superintendent/ ) | |
| Operations, DAVID SMITH, Chaplain, DENNIS ) | |
| MILLER, Captain, and ALAN McCRAINE, ) | |
| Chaplain, ) | |
| ) | |
| Defendants. ) | |

**ENTRY GRANTING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

### I. BACKGROUND

Mark Jenkins ("Mr. Jenkins") is a state prisoner who at all times relevant to the complaint was confined at the Correctional Industrial Facility ("CIF"). Mr. Jenkins alleges that defendants Superintendent Wendy Knight, Assistant Superintendent William Hyatte, Chaplain David Smith, Captain Dennis Miller, and Chaplain Alan McCraine (collectively, "the Defendants"), violated his rights secured under the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, when they impeded, disrupted, or retaliated against Mr. Jenkins for attempting to freely practice his religion. He seeks monetary damages and injunctive relief.

The Defendants have filed a motion for summary judgment seeking resolution of the claims against them based on their affirmative defense that Mr. Jenkins failed to exhaust his available administrative remedies prior to filing this action. Mr. Jenkins responded to the motion for summary judgment and the Defendants replied.

For the reasons explained in this Entry, the Defendants' Motion for Summary Judgment (Dkt. 28) is **GRANTED.**

## II.  LEGAL STANDARDS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a).  A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is genuine only if a reasonable jury could find for the non-moving party.  *Id.*  If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute.  *Scott v. Harris,* 550 U.S. 372, 380 (2007).  The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor.  *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248).  The substantive law applicable to the motion for summary judgment is the Prison Litigation Reform Act ("PLRA"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006)

(footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

### III. DISCUSSION

**A.  Allegations**

Mr. Jenkins alleges that on October 1, 2012, he was appointed the spokesperson for the Native American Circle at the CIF. (Complaint, ¶ 13, p. 6.) In November 2012, defendants Knight, Hyatte, McCraine, and Smith compelled the Native American Circle (the "Circle") to change the site of their worship from the chapel area to the visiting room. (Complaint, ¶ 13, pp. 5-6.) On November 17, 2012, prison "staff was 45 minutes late in providing a lighter for the lighting of sage to burn for smudging, which caused the Circle and Jenkins to be unable to start their worship." (Complaint, ¶ 15, p. 6.) On some occasions in November and December 2012, Jenkins was not allowed to attend his worship service because there was a "no movement" letter on his unit. (Complaint, ¶¶ 16-17, 21, 29, 30, pp. 6, 8, 10.) While at times in November 2012, there was no search of the Circle participants after the worship service, on December 8, 2012, a notice was posted informing Circle members that they would be strip searched upon leaving the service. (Complaint, ¶¶ 14, 18, 22, pp. 6-8.) Mr. Jenkins refused to attend the service with that requirement and he asked to be returned to his unit. CIF staff told Mr. Jenkins that all inmates who came to the service the day before had also refused to participate when notified of the strip search requirement. (Complaint, ¶ 22, p. 8.)

On December 11, 2012, Mr. Jenkins was given a memorandum from Superintendent Knight stating that Mr. Jenkins would no longer serve in any leadership capacity with the Circle at the CIF. (Complaint, ¶ 23, pp. 8-9.) On December 14 and 15, 2012, Mr. Jenkins was afraid to participate in the Circle out of fear of retaliation or a claim that he somehow instigated other members of the Circle to protest the searches. (Complaint, ¶¶ 24-25, p. 9.) On December 18, 2012, another offender was appointed spokesperson for the Circle. (Complaint, ¶¶ 26, p. 9.) That same day, the chaplain issued a notice to members of the Circle stating that there would not be any strip searches of those who attended the Circle. *Id.* Mr. Jenkins also alleges that on December 20, 2012, Superintendent Knight initiated a transfer of Mr. Jenkins to another prison, but the request was denied by the Central Office. (Complaint, ¶¶ 27-28, pp. 9-10.)

On December 21 and 22, 2012, there was a no movement letter in his unit so Mr. Jenkins was unable to participate in the Circle. (Complaint, ¶¶ 29-30, p. 10.) On December 29, 2012, Mr. Jenkins was afraid to attend the Circle because of his concerns about retaliation. (Complaint, ¶ 31, p. 10.)

**B.     Undisputed Facts**

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(c), the following facts, construed in the manner most favorable to Mr. Jenkins as the non-movant, are undisputed for purposes of the motion for summary judgment:

There is a grievance program in place within the Indiana Department of Correction ("IDOC"). IDOC Policy and Administrative Procedure #00-02-301, Offender Grievance Process ("IDOC Grievance Policy"), is the policy governing the grievance procedure and sets forth how an offender must exhaust his administrative remedies.

Offenders may grieve matters that involve actions of individual staff under the grievance program at the CIF, including those actions alleged in Mr. Jenkins' complaint. The IDOC Grievance Policy requires an attempt to resolve the complaint informally, as well as two formal steps: a level one formal written grievance and then a level two appeal of the response. If an offender is unable to resolve his complaint or concern informally, he must file a formal level one grievance. A level one grievance form must be submitted no later than twenty (20) working days from the date of the incident giving rise to the complaint or concern. If the offender is not satisfied with the level one response, he must file a level two appeal. Exhaustion of the grievance procedure requires the completion of all three steps of the process.

Mr. Jenkins placed six grievances concerning his claims in this case in the grievance drop box located in the entry way to the offenders' dining hall. Those grievances have never been assigned a number or been acknowledged as having been received by the CIF staff.

On December 17, 2011, Mr. Jenkins submitted a grievance concerning the staff failing to provide a lighter at the start of the Circle. The January 5, 2012 response stated that the Executive Assistant spoke with the chaplain and the chaplain "has addressed the lighter issue. Therefore your grievance is denied and you may appeal this response." Mr. Jenkins appealed the denial on January 27, 2012, and the appeal was forwarded by the Executive Assistant to the Central Office on February 15, 2012.

**C.     Analysis**

As noted, the Defendants seek summary judgment on the basis that Mr. Jenkins failed to exhaust his available administrative remedies. Mr. Jenkins raises several arguments in opposition to the motion for summary judgment.

Mr. Jenkins has used the grievance procedures articulated under the IDOC Grievance

5

Policy at various times since at least 2008, including grievances related to the exercise of his religion. Mr. Jenkins did not, however, complete the three step process with respect to any of his claims brought in his complaint.

Mr. Jenkins first argues that because he sought monetary damages, the prison policy did not apply to his claims. In essence, he contends that filing a grievance would have been futile. This argument has been rejected by the Supreme Court. "[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "Exhaustion is necessary even if the prisoner is requesting relief that the relevant administrative review board has no power to grant, such as monetary damages, or if the prisoner believes that exhaustion is futile." *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006) (citations omitted); *Dixon v. Page,* 291 F.3d 485, 488 (7th Cir. 2002) (the PLRA requires exhaustion "even if the [grievance] process could not result in a prisoner's desired form of relief"). Therefore, Mr. Jenkins' assertion of futility as an excuse for his failure to exhaust administrative remedies fails as a matter of law.

Mr. Jenkins next contends that he has filed grievances on the same issues before and that he should not have to file a new grievance each time a prison official acts in a manner that contributes to the continuation of a problem already raised in an earlier grievance. The Defendants agree in principle that "prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour,* 729 F.3d 645, 650 (7th Cir. 2013). The Defendants argue that the claims here do not invoke the same exact issues and that therefore Mr. Jenkins should be required to exhaust each specific allegation and provide the IDOC an opportunity to address the problems. The Court shall consider whether the Defendants' position is persuasive with respect

to the single claim that Mr. Jenkins has grieved in the past.

The record reflects that on December 17, 2011, Mr. Jenkins filed a grievance about the CIF staff being late in providing a lighter for the Circle. In Mr. Jenkins' appeal of that grievance, he asserts that the lighter is secured in "tool control" and that apparently sometimes the chaplain "forgot" to obtain the key to "tool control" and pick up the lighter. In this case, Mr. Jenkins alleges that on November 17, 2012, staff was 45 minutes late in providing a lighter for the lighting of the sage which caused Mr. Jenkins and the Circle to not be able to start their worship. (Complaint, ¶ 15, p. 6.) This is not an instance of a continuing prison policy. Moreover, the two alleged instances of not being provided a lighter at the beginning of the Circle occurred eleven months apart. The grievance process is well-suited for these individual instances of oversight. Putting prison staff on notice of this problem serves the purpose of exhausting administrative remedies so that informal resolution and added diligence can be achieved. Under these circumstances, the "untimely lighter" is not a continuing, objectionable condition that escapes the exhaustion requirement.[1]

Mr. Jenkins' most compelling argument is that he did, in fact, submit six new grievances with regard to issues in this case but never received a response. He attached copies of the grievances as exhibits 1, 2, 4, 6, 8, and 9 to his complaint. Four of those grievances, filed in November and December 2012, allege that he was unable to attend Circle because of the "no movement" letter on his unit. One grievance stated that Superintendent Knight removed Mr.

---

[1] Mr. Jenkins also argues that he filed a tort claim notice and he was therefore "barred" from filing a grievance. This theory is misplaced. Filing a tort claim notice is a necessary prerequisite to filing a state law claim against a governmental entity, but it does not substitute for the requirement to exhaust available administrative remedies before bringing a civil rights claim in federal court. *See Pettiford v Hamilton,* 1:07-cv-675-DFH-TAB, 2008 WL 4083171, *3 (S.D. Ind. Sept. 3, 2008) ("Filing a Notice of Tort Claim is not a substitute for complying with the administrative process…."). As noted above, exhaustion under the PLRA requires compliance with all three steps of the prison's grievance procedure. Filing a tort claim notice invokes a different legal procedure and does not initiate the three step prison grievance process, nor does it bar the filing of a grievance.

Jenkins from his leadership role with the Circle without any reason. In another grievance, Mr. Jenkins alleged that he was told by Counselor Austin that Superintendent Knight had initiated his transfer to another level two prison so that he could continue to practice his Native American religion. Mr. Jenkins alleges that this transfer request was retaliatory. Mr. Jenkins states under oath that he placed these grievances in the drop box at the CIF but never received a response to any of them. He has also attached affidavits from two other inmates stating that each of them had submitted one or more grievances at the CIF that were never acknowledged. In other words, Mr. Jenkins contends that the grievance process was not available to him because he received no response to several grievances. "Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole,* 438 F.3d at 809.

The Defendants reply, however, by noting that the grievance policy has a provision that is meant to circumvent any problems with failing to receive a response to a grievance. "If the offender receives no grievance response within 25 working days of the day he or she submitted the grievance, he or she may appeal as though the grievance had been denied." IDOC Grievance Policy, p.23, docket 28-1. "In that event, the time to appeal begins on the 26th working day after the grievance was submitted and ends 10 working days later." *Id.* There is no evidence, nor even an allegation, that Mr. Jenkins proceeded with the appeal step of the grievance process with respect to the six grievances to which he received no response. Under these circumstances, Mr. Jenkins failed to complete the exhaustion process.

The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that Mr. Jenkins' action should not have been brought against the Defendants and must now be dismissed

without prejudice. *See Ford,* 362 F.3d at 401 ("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice."); *see also Pozo,* 286 F.3d at 1024 (explaining that "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. Failure to do what the state requires bars, and does not just postpone, suit under § 1983.").

### IV. CONCLUSION

For the reasons explained above, the Motion for Summary Judgment filed by the Defendants (Dkt. 28) is **GRANTED.**

Judgment consistent with this Entry and with the Entry of April 11, 2013, dismissing other defendants, shall now issue.

**SO ORDERED.**

Date: 12/02/2013

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Mark A. Jenkins, #963737
Correctional Industrial Facility
Inmate Mail/Parcels
5124 West Reformatory Road
Pendleton, Indiana 46064

Jefferson S. Garn
OFFICE OF THE INDIANA ATTORNEY GENERAL
jefferson.garn@atg.in.gov

Lakesha D. Triggs
OFFICE OF THE INDIANA ATTORNEY GENERAL
lakesha.triggs@atg.in.gov